**FILED**
July 28, 2026 04:56 PM
SX-2026-CR-00009
**TAMARA CHARLES**
**CLERK OF THE COURT**



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, <br><br>                 **PLAINTIFF,** <br> V. <br><br> FRANCISCO CRUZ-SANTIAGO, <br>                 **DEFENDANT.** | **CASE NO. SX-2026-CR-00009** |
| PEOPLE OF THE VIRGIN ISLANDS, <br><br>                 **PLAINTIFF,** <br> V. <br><br> EDWIN RIVERA, <br>                 **DEFENDANT.** | **CASE NO. SX-2026-CR-00100** |

Cite as: 2026 VI Super 34 U

**MEMORANDUM OPINION**

¶1. **THESE MATTERS** are before the Court on the People's Motions to Dismiss. The People have moved for dismissal in both matters following a determination that the defendants were not competent to stand trial. These matters are in no way connected, however given the substantially similar factual and procedural backgrounds, the Court issues this Memorandum Opinion in both cases for administrative efficiency. For the reasons set forth below, the Court finds that dismissal is premature because the People have not met their obligations under the Behavioral Health Act to first subject Defendants to the Civil Commitment process.

## I.    BACKGROUND

¶2. The Defendant in SX-2026-CR-00009 was charged with Disturbance of the Peace and Destruction of Other Property. The defense moved for a competency evaluation at the Defendant's Advice of Rights. At a status conference on March 16, 2026, the parties indicated that they would stipulate that the Defendant was not competent to stand trial, and the Court ordered them to file a Stipulation as to Competency Status and a proposed treatment plan no later than March 27, 2026. On or about April 1, 2026, A proposed treatment plan was

submitted, and the Court granted the People's motion for competency restoration, giving the People 60 days to obtain proper placement for the Defendant, and set the matter for a status conference at the end of May. At the May 27, 2026, status conference, the People expressed difficulties in placing the Defendant as the preferred institution was not accepting placements from the Government of the Virgin Islands due to outstanding balances. A day before the next status conference the People moved to dismiss due to difficulties in placement.

¶3    The Defendant in SX 2026-CR-00100 was charged with Destruction of Other Property, Unlawful Entry, and Disturbance of the Peace. On April 13, 2026, counsel for the Defendant moved for the Defendant be evaluated to determine whether he was competent to stand trial. The Court granted Defendant's motion and he was evaluated. Following said evaluations, the People stipulated at the competency hearing that based upon the evaluations, the Defendant was incompetent to stand trial. Thereafter, as a matter of resource allocation or out of convenience, the People moved to dismiss the charges against the Defendant instead of moving to place him for treatment in a suitable facility as is mandated by 19 V.I.C. §1028.

¶4    In each of these matters the Court held the People's motions in abeyance, and ordered the parties to brief the impact of the Behavioral Health Act upon the People's prosecutorial discretion to dismiss charges against an incompetent person.

### A.    The People's Argument

¶5.    The People argue that the Behavioral Health Act does nothing to abrogate the Executive Branch's core prosecutorial discretion and that "[the Act's] core function is protective and procedural, ensuring that defendants are not tried while incompetent and ensuring that the

Government provides treatment opportunities during competency restoration, this allowing for criminal procedures to resume once competency has been achieved[1]."

¶6. The People further argue that separation of powers principles prevent the Court from interfering with the Executive's dismissal decisions; that absent clear legislative language, statutes should not be construed to intrude upon core executive functions; and that where restoration is unlikely or impracticable "the People retain discretion to determine that continued prosecution is not viable and civil commitment mechanisms better serve public safety and the defendant's needs[2].

¶7 The People finally argue that "[a] person may be found not competent and yet not meet the criteria for involuntary commitment as contemplated in 19 V.I.C. § 1026 or §1039. Less restrictive treatment options may include outpatient services, guardianship due to lack of capacity, and family support services for those who care for the person found not competent." The People support none of these arguments with citation to legal authority.[3]

---

[1] The People also argue that Section 1028(g) is predicated upon a hearing, and that its provisions are inapplicable in this case because the People moved to dismiss *before the Court weighed any evidence*. The People engage in semantics. The hearing requirement protects the defendant and requires the People to meet their burden of proving competency. In this matter, the People have conceded the Defendant is not competent to stand trail.

[2] The Court agrees that civil commitment should be pursued, and questions why the People would dismiss without commencing proceedings to determine whether civil commitment is appropriate for the Defendant.

[3] The People are reminded that all motions must include citations to the legal authorities upon which it relies. V.I. R. Crim. P. Rule 47(b). "[S]imply stating a principle of law without any argument or explanation of how it applies to the case at hand is not sufficient to fairly present [an] issue to the Superior Court." *Lee J. Rohn & Assocs. v. Chapin*, 2018 V.I. LEXIS 128, *6-7 quoting *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 782 (V.I. 2015)). "The rules that require a litigant to brief and support his arguments ... before the Superior Court, are not mere formalistic requirements. They exist to give the Superior Court the opportunity to consider, review, and address an argument . ..." *Simpson v. Golden*, 56 V.I. 272,

## B.     *Defendant's Argument*

¶8     Counsel for Defendants argues that Due Process fundamentally requires that a person must be competent to stand trial, and that here, experts have opined that he is presently incompetent and that due to his own unique circumstances his competency is unlikely to be restored; and as such, continued prosecution will violate his due process rights. They further argue that pursuant to the Behavioral Health Act, the Department of Health is only afforded 12 months for restoration to competency; that it is unlikely that his competency would be restored in such time; that sending him to a stateside facility would be a huge burden on the Territory which would yield poor results in this case; and that it makes sense that the Department of Justice exercise their discretion and act wisely in sending individuals to stateside facilities, prioritizing the more needy cases which will hopefully have better results. In support, the Defendants cite *Newton v. Rumery*, a U.S. Supreme Court case from 1987 which has no bearing on the statutory requirements of the Behavioral Health Act but instead speaks generally to prosecutorial discretion in the absence of statutorily imposed guardrails. Defendants next argue that while the Behavioral Health Act mandates treatment, it does not contemplate situations where competency restoration is deemed useless and unlikely to succeed in the relevant timeframe and only applies where a person has been found incompetent and the government continues to pursue prosecution.

---

280 (V.I. 2012); *see also* V.I. R. Civ. P. Rule 6-1(a)(2) ("All motions must state with particularity the grounds for seeking the order, including a *concise statement of reasons and citation of authorities*[.]") (emphasis added).

¶9. Next, the Defendants argue that an interpretation of the Behavioral Health Act to mandate the Court place incompetent Defendants in DOH's custody with no judicial discretion violates separation of powers.

¶10. Finally, the Defendants argue that application of §1028(g) of the Behavioral Health Act in misdemeanor cases is unconstitutional because it may result in detention beyond the period of confinement they face if convicted in violation of their fundamental liberty interest in remaining free from incarceration.

## II.    LEGAL STANDARD

¶11. The court may deny a motion to dismiss, or may grant the dismissal but with prejudice only, to protect a defendant from harassment by a prosecutor acting in bad faith, to protect "the public interest in the fair administration of criminal justice and ... to preserve the integrity of the courts. ... [Consequently,] [a] court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is 'clearly contrary to manifest public interest.'" *Phillip v. People of the Virgin Islands*, 58 V.I. 569, 599-600, 2013 V.I. Supreme LEXIS 28, *55-60, 2013 WL 3293904. The Court is cognizant that it "should refuse to grant the People's dismissal request only in the "rarest" of cases, for it is the People who are presumed to be the best judge of where the public interest lies with respect to a criminal prosecution. *Id.*

## III.    ANALYSIS

¶12. The Court will not look at the motions to dismiss in a vacuum. While in the present matter the Defendants are charged only with misdemeanors (including destruction of property (DV), unlawful entry, and disturbance of the peace), according to the Probable Cause Fact Sheets and Court records, in one case this is the third occurrence of similar behavior by the Defendant and his family fears him due to his unpredictable actions. His record of contact with

the Court reflects multiple closed felony and misdemeanor cases brought against him for both crimes against persons and crimes against property, all of which were dismissed by the People due to his mental state. In the other matter, the Defendant's record of contact with the court includes violent felony charges including Attempted Murder where, just as in this matter, the People moved to dismiss due to difficulties placing him for treatment. The People's dismissal of these matters without taking steps to protect the community demonstrates a troubling pattern of catch and release—one that is not without consequence to the community, or which does not impact the Court's resources. And while the Court is cognizant of—and indeed respects—the People's prosecutorial discretion, as set forth below, the Court construes the Behavioral Health Act to require the People to bring Civil Commitment Proceedings before dismissal where, as here, the defendant is incompetent to stand trial and after a reasonable period has passed it is determined that the defendant will not be restored to competency.

### A. The Behavioral Health Act Subjects Incompetent Defendants to Civil Commitment Procedures Pursuant to 19 V.I.C. §§1026 and 1039.

¶13.    The applicable provisions of the Behavioral Health Act are as follows:

> At any time after the start of a prosecution for a criminal offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant, his attorney, or the Attorney General, may file a motion for a hearing to determine the mental competency of the defendant, or the court may order a competency hearing *sua sponte*.

19 V.I.C. § 1028 (a).

> The court shall grant the motion, or shall order a hearing, if there is reasonable cause to believe that the defendant may presently be suffering from a mental health disorder rendering the defendant mentally incompetent to the extent that the defendant is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

19 V.I.C. § 1028(b)

> After the hearing, if the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental health disorder rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense,

the court shall commit the defendant to the custody of the Department of Health/Division of Behavioral Health.

19 V.I.C. § 1028(g)

Upon the court order the Department of Health/Division of Behavioral Health **shall cause the hospitalization of the defendant** for treatment in a suitable facility for the following:

(1) A reasonable period not to exceed twelve months as is necessary to determine whether there is a probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward or for an additional reasonable period whichever is earlier when:

> (A) The mental condition is so improved that trial may proceed if the court finds that there is a probability that within the additional period, the defendant will attain the capacity to permit the proceedings to go forward; or

> (B) The pending charges against the defendant are disposed of according to law.

(2) If at the end of the period specified by the evaluation, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the **defendant is subject to civil commitment procedures** pursuant to sections 1026 and 1039.

19 V.I.C. § 1028 (h)

¶14. To determine whether there is a conflict between the People's prosecutorial discretion and the provisions of the Behavioral Health Act, the Act and its applicable provisions to the matter must first be construed. "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* at 334 (quoting *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013)). In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — "wholly superfluous and without an independent meaning or function of its own." *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012); *see also* 1 V.I.C. § 42 ("Words and phrases shall be read with their context."); *Ottley v. Estate of Bell*, 61 V.I. 480, 493 (V.I. 2014) (we must look to "the context

surrounding each statute" to determine the Legislature's intent). But even where a statutory scheme is plain and internally consistent, "no statute should be read literally if such a reading is contrary to its objective [and] this Court must consider whether applying the statute's literal language leads to ... absurd consequences or is otherwise inconsistent with the Legislature's intent." *In re L.O.F.*, 62 V.I. 655, 661, 2015 V.I. Supreme LEXIS 13, \*8-9 citing *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (internal quotation marks, citation, and alteration omitted); *see also Peters v. People*, 60 V.I. 479, 483 (V.I. 2014); *Rohn v. People*, 57 V.I. 637, 646 n.6 (V.I. 2012); *Brady v. Gov't of the V.I.*, 57 V.I. 433, 442-43 (V.I. 2012) *see also In re Adoption of R.B.F.*, 569 Pa. 269, 803 A.2d 1195, 1203 (Pa. 2002) ("It is a settled rule that in the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment.") accord. *Heyliger v. People of the Virgin Islands*, 66 V.I. 340, 350, 2017 V.I. Supreme LEXIS 9, \*9-10. Accordingly, in construing the Behavioral Health Act, the Court's primary loyalty must be to the statute's legislative purpose." *In re L.O.F. supra.*

¶15.    The Legislature of the Virgin Islands passed the Behavioral Health Act (the "Act") on December 29, 2022, and it was signed into law on January 19, 2023.  In passing the Act, the Legislature sought to provide for services and interdepartmental coordination of agencies and organizations to provide a structure of support for individuals suffering from behavioral health challenges in a comprehensive way to ensure the treatment of individuals both voluntarily and involuntarily.  Indeed, in the preamble to the Act the Legislature confirmed a need for supervision and oversight by the courts, behavioral health professionals, and institutions dealing with persons within the Virgin Islands in need of services.  And pursuant to §1000 of the Act, its procedures must be applied consistent with due process to make voluntary and involuntary treatment available where the need is great and where the absence of treatment could result in serious harm to the individual or others.  19 V.I.C. §1000 (d) (emphasis added).

¶16. With respect to competency, the Act provides a mechanism that is familiar to both the Court and counsel, where upon motion of the Defendant, his attorney, the Attorney General OR the Court's own initiative, a hearing may be set to determine the mental competency of the defendant. The Act further provides that if "the Court determines by a preponderance of the evidence the defendant is presently suffering by a mental health disorder rendering him mental incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the Court shall commit the defendant to the custody of the Department of Health/Division of Behavioral Health" (19 V.I.C. §1028(g)) who shall hospitalize him for a reasonable period of up to 12 months to determine if he may in the reasonable future be restored to competency. 19 V.I.C. §1028(h)(1). The legislature's choice of the words "shall commit" and "shall hospitalize" demonstrate its clear intent to define the public interest in mandatory terms.

¶17. The Act further provides "[i]f at the end of the period specified by the evaluation, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to civil commitment procedures pursuant to sections 1026 and 1039. 19 V.I.C. §1028(h)(2). These provisions must be construed in light of the People's prosecutorial discretion.

¶18. Here, it is without a doubt that the Defendant are persons in need of services, and that they are not at present competent to stand trial. Moreover, Defendants and the People appear to agree that the likelihood Defendants will be restored to competency is nil. And while the People attempt to avoid responsibility for doing so by dismissing before the Court can order restoration, they concede (but will not commit) that the Act contemplates the next step in the process to be involuntary commitment pursuant to 19 V.I.C. §1028(h)(2).

¶19. While Defendants argue this interpretation of the statutory scheme would unconstitutionally deprive the Court of discretion in violation of the Separation of Powers Doctrine, the Court disagrees. The Court is not deprived of discretion by subjecting the Defendant to involuntary commitment procedures pursuant to 19 V.I.C. §§1026 and 1039 because neither of those provisions mandate commitment. Instead, it is pursuant to those sections that the Court will exercise its discretion to determine whether the Defendant should be civilly committed. Section 1028 does not deprive either branch of discretion. It merely provides procedural guardrails to ensure that where a Defendant cannot be restored to competency, he is not released into the wild where he may be a danger to himself, other persons, or the property of others; but instead, is first evaluated for services. It is at that point that if the Court deems it appropriate, it will order that the Defendant be placed in an institution for the protection of both the Defendant and the community.

¶20. Title 19, Section 1026 of the Virgin Islands Code includes tight timelines. A hearing must be set not later than 5 days after a petition is filed. At that hearing, the court shall review all relevant testimony, including the testimony of at least one licensed medical practitioner or a behavioral health professional who has examined the person, a spouse, parent, guardian, relative, or a community member. The Attorney for the person for whom commitment is being sought must be afforded an opportunity to call witnesses and cross-examine witnesses. And if the Court finds by clear and convincing evidence that the person requires commitment the Court shall issue an order committing the person to the Care and Custody of the Department of Health.

¶21. Clearly Defendants' due process concerns are addressed by this process, where they will be promptly given a hearing and have an opportunity to be heard. They will be represented by counsel, and will not be committed without clear and convincing evidence that commitment

is required. Similarly, their concerns that the Court's discretion is unconstitutionally limited if the Court is forced to place them in the custody of the Department of Health are misplaced because the pre-hearing custody contemplated in the Act is temporary; and will be followed by a commitment proceedings pursuant to §1026 where the Court's discretion to involuntarily commit them (or not) will be exercised.

¶22. The Court and the parties agree that criminal prosecution cannot proceed without competency and that a defendant cannot be held indefinitely in a criminal matter solely due to incompetency. And it appears that the People and the Court are generally in agreement that civil commitment provides a structured constitutional alternative that better serves the public safety and the Defendants' needs. The Court and the People diverge only on whether the decision to pursue civil commitment is solely within the People's discretion where a criminal defendant cannot be restored to competency.

¶23. The Court interprets the Behavioral Health Act as the Legislature's policy determination that with respect to those persons in need of behavioral health services, catch and release prosecution must end. Where (as the parties allege here) an incompetent criminal defendant cannot be restored to competency, the solution is not for the People to dismiss the criminal matter without first taking steps to protect both the Defendant and the community. Following enactment of the Behavioral Health Act it is clearly contrary to manifest public interest to do so.

¶24. As to the Defendants' argument that application of the Behavioral Health Act's commitment and/or restoration procedures to misdemeanor defendants unconstitutionally deprives them of their liberty because the time necessary to implement its strictures may exceed the punishment itself, while the Court is sympathetic, it is of a view that the Act contains

safeguards to ensure the Defendants receive due process. Specifically, where a defendant is found incompetent, the Act limits the initial period of hospitalization for treatment to twelve months, at which time it must be determined whether it is likely that an additional reasonable period of time might result in restoration of competency OR if not, that the defendant be subjected to civil commitment—a non-punitive status—for treatment. Moreover, Defendants' position would yield an absurd result that would prevent misdemeanor defendants who are mentally ill and are a danger to themselves or the community from being civilly committed. This would be an absurd result because those same Defendants could be subjected to civil commitment without ever entering the criminal justice system at all.

¶25. Finally, the Court would be remiss if it did not remind Defendants that application of the Behavioral Act to them does not indicate that they will be automatically committed to the indefinite care of the Department of Health. It merely means that the People must bring the matter before the Family Division and present the facts for a judge's determination. And only to the extent that those proceedings determine that defendants are dangerous to themselves or the community will they be deprived of their liberty for a period longer than they face if found guilty. Under these circumstances substantive due process is not offended. *United States v. Perry*, 788 F.2d 100, 113, 1986 U.S. App. LEXIS 23867, *37 (3d Cir. April 7, 1986).

## IV.    CONCLUSION

¶26. The legislature has spoken. It created a statutory framework to ensure (among other things) that in instances such as this, a criminal defendant will be subjected to civil commitment proceedings. The Court will not interpret the Act in a way that allows the People to circumvent this important step in the process and dismiss criminal charges to avoid responsibility. Contrary to the People's assertion, this is not an infringement upon the People's discretion to dismiss.

Instead, it is a mere restriction on the timing of the People's exercise of such discretion which mandates steps that the People must take to protect both the person in need of services and the community at large before criminal proceedings are dismissed for an incompetent defendant.

¶25.    To be clear, it is without dispute that the People have discretion to determine what charges to bring, and such discretion is protected by the Separation of Powers doctrine.  But it is equally without dispute that it is the legislature's prerogative to insist that steps be taken civilly to protect the community before the People exercise their discretion to dismiss criminal charges in a manner that will otherwise subject the public to potential harm.  Accordingly, by separate Orders, the People's Motions will be denied without prejudice until such time as the People have satisfied the requirements of the Behavioral Health Act including without limitation those set forth in §1028(h) by filing their petitions in the Family Division.

**DATE**: July 28, 2026

_____
**HON. CHRISTOPHER M. TIMMONS, SR.**
**Magistrate Judge**

**ATTEST:**
**TAMARA CHARLES**
**Clerk of the Court**

**By**:_____
    Cheryl Clarke -CCS

**Date**: July 28, 2026